**WOOD MARINE SERVICE, INC.,**
Plaintiff–Appellee,

v.

**CITY OF HARAHAN,**
Intervenor–Appellant,

v.

**BOARD OF COMMISSIONERS FOR the EAST JEFFERSON LEVEE DISTRICT and its individual members in their official capacity, Defendant.**

No. 87–3740.

United States Court of Appeals,
Fifth Circuit.

Oct. 28, 1988.
Rehearing Denied Dec. 1, 1988.

Thomas P. Anzelmo, McGlinchey, Stafford, Mintz, Cellini & Lang, New Orleans, La., for intervenor-appellant.

Peter Burke, Jon W. Wise, Lugenbuhl, Burke, Wheaton, Peeck & Rankin, New Orleans, La., for Wood Marine Service, Inc.

Before CLARK, Chief Judge,
BROWN and JOLLY, Circuit Judges.

CLARK, Chief Judge:

The City of Harahan, Louisiana appeals from an order of the District Court for the Eastern District of Louisiana permanently enjoining the enforcement of Harahan's comprehensive zoning ordinance on the ground that the ordinance violates the Commerce Clause of the United States Constitution by burdening trade on the Mississippi River. Finding no impermissible burden on interstate commerce, we reverse the lower court's decision and vacate the order granting permanent injunction.

## I.

A. The history of the challenged zoning ordinance.

Harahan, Louisiana borders on the Mississippi, ten miles upriver from New Orleans in Jefferson Parish. A levee 140 feet wide and 20 feet high protects Harahan from the river's natural meanderings. The batture—alluvial land between the river's low water edge and the inside toe of the levee—is 750 feet in width at this point. Although Harahan is essentially a residential community, the batture here has been commercially developed to participate in the commerce that flows with the Mississippi. The plaintiff, Wood Marine Service, Inc. (Wood Marine), engages in maritime operations on the river and batture that include barge fleeting and the mooring of other vessels, cargo loading and discharge, and the dredging and storing of river sand. Wood Marine's batture property is situated between two other fleeting operations and across the river from one of New Orleans' largest shipyards.

In 1984, Wood Marine decided to erect a mooring in the Mississippi River that would enable it to discharge dry bulk cargo, significantly expanding its operation. In February of 1984, Wood Marine applied for a permit from the United States Army Corps of Engineers (Corps) to erect the structure in the river within Harahan's city limits. Prior to this time, commercial operations on the batture had remained virtually unchanged for over thirty years.

Wood Marine's application met with stiff opposition from Harahan's residents. Resolutions opposing the proposed expansion were passed by Harahan's Board of Aldermen, the Jefferson Parish Council, the Board of Levee Commissioners, and the Jefferson Parish School Board. Letters of protest were received by the Corps from state and federal legislators, physicians and engineers who testified about environmental and health concerns, and many local citizens. Petitions were circulated throughout Harahan's residential communities. A public hearing on Wood Marine's request attracted over 2,000 of Harahan's 13,000 residents. Following this strong expression of public opinion and the development of the government's environmental impact study, the application was denied by the Corps.

Harahan's residents were not protesting merely the expansion of Wood Marine's operation. The protest reflected the community's widespread concern over the effect of further commercial development on the batture and in Harahan. Further development, it was feared, threatened Harahan's quiet neighborhoods and good schools with noise and pollution. Apparently induced by this concern, the City of Harahan commenced a complete review of the city's comprehensive zoning ordinance. The city hired a special consultant who conducted over a year of study and public hearings, resulting in the city's adoption of a totally revised ordinance on July 11, 1985.

Development of the portion of the batture that lies within the city limits is governed by section XII of Harahan's comprehensive zoning ordinance. The purpose of the section is clear from its face—to curtail further commercial development of the batture.

SECTION XII. *N.U. Non–Urban Batture District.*

1. This district is composed of lands that lie outside the protective levees between the crest of the Mississippi levee and the water level of the Mississippi River. Land uses permitted in this district are limited to temporary development consistent with traditional development in these areas and will be under conditions which will reduce the possibility of flooding due to abnormal high water in the Mississippi River.

2. *Permitted Uses.*

In the N.U. Non–Urban Batture District only the following uses are permitted.

A. Barge mooring and holding facilities.

B. Nature or natural parks.

C. Public and private forests, parks, parkways, wild life, reservations or similar conservation projects.

D. Public utility structures and land.

E. Sand extraction, provided that the necessary safeguards are provided to protect the surrounding areas and access roadways from obnoxious or offensive odors, dust, light, noise or vibration.

F. Accessory uses attendant to the above uses provided no structure exceeds a maximum of 1,000 square feet in area. Boat or ship manufacture or repair are not permitted unless such repair constitutes an emergency.

3. *Height Regulations.*

No building or structure shall exceed 13 feet in height.

4. *Area Regulations.*

A. Yard

(1) No front, side or rear yard is required.

B. Lot Area.

(1) No minimum lot area is required.

5. *Off Street Parking Requirements.*

Off street parking requirements are provided in Section XIII.

B. The present dispute.

In May of 1986, Wood Marine informed the Jefferson Parish Levee District that Wood Marine would commence the loading and unloading of crushed limestone and other construction materials at its existing facilities within Harahan. The levee district advised Wood that it could not commence such operations without a permit. Violations were subject to criminal prosecution. Dissatisfied, Wood Marine filed a complaint seeking injunction against the Board of Commissioners for the East Jefferson Levee District in the United States District Court for the Eastern District of Louisiana. The complaint alleged that the levee district and the City of Harahan had conspired to prevent Wood Marines' operations in violation of the Constitution and other laws of the United States. Soon thereafter, the City of Harahan petitioned to intervene in the action and averred that the granting of the injunction would deprive the city of its right to regulate commerce through zoning in order to protect the health and property of its citizens. Section XII governing development of the batture was specifically referenced. After the city intervened, the defense of the injunction fell entirely on the city. The levee board filed no responsive pleadings after its general denial. The city relied solely on the comprehensive zoning ordinance to defend against the injunction. The ordinance thus became the focus of the dispute.

The action went to trial before the judge upon stipulated testimony and exhibits. The stipulated evidence chronicled the history of the zoning ordinance, but did not establish its efficacy or isolate its goals. Wood Marine argued that the ordinance was preempted by state and federal statute and was a violation of the Commerce Clause. The district court concluded that, although the city had authority under federal and state statutes to adopt the ordinance, it had not substantiated the benefits of the ordinance. The court ruled that without substantiating the efficacy of the ordinance, the city could not justify its burden upon interstate commerce under the Commerce Clause. Because we find that the city's zoning ordinance does not burden interstate commerce, we reverse.

## II.

This summer's drought, which temporarily but dramatically reduced the Mississippi River's flow, again demonstrated the importance of the trade that flows with the river. No state's history and economy is more closely tied to the Mississippi River than that of the State of Louisiana, and no state more jealously guards against impediments to the river's commerce. In Louisiana, the rights of riparian owners are subject to the public's right to utilize the river and the batture for navigation and commerce. *See, e.g.,* La.Civil Code arts. 455, 456, and 665; La.Stat.Ann. §§ 9:1102; 34:22; *Parish of Jefferson v. Universal Fleeting Co., Inc.,* 234 So.2d 88 (La.App. 1970). Although the batture is private land, it is subject to numerous public uses incident to navigation such as the right to moor temporarily, to unload cargo, and to pass freely over the batture from the river. *See* La.Atty.Gen. op. 81–751, at 198 (1981); Yiannopoulos, The Public Use of the Banks of Navigable Rivers in Louisiana, 31 La.L. Rev. 563, 573–74 (1971). In such ways, and many others, Louisiana protects the river's commerce.

Riparian land owners are subject to clear distinctions under Louisiana law as between public and private uses. *See* La. Civil Code art. 455. Although Wood Marine as the riparian owner possesses the right to develop the batture, it may not obstruct or impede the public right of navigation. *Kliebert Educ. Trust v. Watson Marines Servs., Inc.,* 454 So.2d 855, 858–59 (La.App.1984), *appeal denied,* 471 U.S. 1050, 105 S.Ct. 2108, 85 L.Ed.2d 474 (1985); *Universal Fleeting,* 234 So.2d at 91. Likewise, Harahan may zone only private uses of the batture and not public uses. Control of public uses is reserved to the State. La.Atty.Gen. op. 81–751, at 198–99 (1981); *Universal Fleeting,* 234 So.2d at 92.

The Harahan ordinance controls only the private uses of the batture. All traditional uses, including state reserved public uses, are preserved. The ordinance is consistent with Louisiana law.

## III.

The national government also recognizes the importance of the Mississippi and its tributaries. Louisiana was admitted to the Union upon the condition that "[a]ll the navigable rivers and waters in the Territory of Orleans and Louisiana shall be and forever remain public highways." Act of Feb. 20, 1811, codified 33 U.S.C. § 10; *see also Hamilton v. Vicksburg, S. & P. Ry. Co.,* 119 U.S. 280, 7 S.Ct. 206, 30 L.Ed. 393 (1886). This general proclamation, however, does not preempt all state regulation of navigable waterways. *Cummings v. City of Chicago,* 188 U.S. 410, 428–29, 23 S.Ct. 472, 476–77, 47 L.Ed. 525 (1903). It has not been shown that the Harahan ordinance contradicts any specific federal statute. The only remaining question is whether the ordinance violates the Commerce Clause.

## IV.

Under the Commerce Clause of our national compact, Congress possesses the exclusive power to regulate interstate commerce. U.S. Const. Art. I, § 8. The purpose and effect of the Clause is to create a national economy in which there are no state boundaries. *See, e.g., West v. Kansas Natural Gas Co.,* 221 U.S. 229, 255–56, 31 S.Ct. 564, 571–72, 55 L.Ed. 716 (1911). "[O]ur economic unit is the nation." *H.P. Hood & Sons v. Du Mond,* 336 U.S. 525, 537, 69 S.Ct. 657, 664, 93 L.Ed. 865 (1949). By negative implication the Clause restricts the power of individual states to erect barriers to interstate commerce. *Id.* at 534–35, 69 S.Ct. at 663–64. Municipal governments also fall within the Clause's restrictions. *Dean Milk Co. v. City of Madison,* 340 U.S. 349, 353, 71 S.Ct. 295, 297, 95 L.Ed. 329 (1951). Economic protectionism by a state or municipality that hinders interstate commerce will be tolerated only in rare and extraordinary cases. *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 471–72, 101 S.Ct. 715, 727–28, 66 L.Ed.2d 659 (1981). State and local regulations that apply "evenhandedly" to local and out-of-state goods and providers but incidentally burden interstate

commerce will be struck down if "the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Id.* at 472, 101 S.Ct. at 728, quoting *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970).

Nothing in the stipulation or ordinance suggests that Harahan's zoning regulation discriminates, intentionally or in effect, against out-of-state goods or suppliers. The ordinance is directed at local landowners alone. Its purpose is to stop further commercial development within the city's boundaries, not to favor local companies and the local economy at the expense of out-of-state rivals.

■ The district court, however, found that it was "unquestioned that the ordinance impacts on [interstate] commerce …," and therefore, the court balanced the "legitimate local purpose" of the statute against the assumed impact upon interstate commerce. The district court found no evidence to substantiate that the ordinance furthered the city's goal of maintaining its residential neighborhoods in order to offset the assumed impact upon interstate commerce. It was on this basis that the district court held the statute unconstitutional. Although the city supplied little direct evidence that the ordinance would serve its apparent purpose, we need not reach the balancing test because we find no evidence of any burden upon interstate commerce. Before the standards derived from the Commerce Clause are applied some burden must be established. *Exxon Corp. v. Governor of Maryland,* 437 U.S. 117, 127–28, 98 S.Ct. 2207, 2214–15, 57 L.Ed.2d 91 (1978); *Huron Portland Cement Co. v. City of Detroit,* 362 U.S. 440, 448, 80 S.Ct. 813, 818, 4 L.Ed.2d 852 (1960).

■ In this case, there is no evidence of even an incidental burden on interstate commerce. The sole demonstrated effect of the zoning is that Wood Marine will not be able to discharge crushed limestone and other construction materials at its Harahan facility. There is no evidence that less of these materials will be shipped into Louisiana. Wood Marine complains only that it will not be the consignee or user. However, the "Commerce Clause protects the interstate market, not particular firms, from prohibitive or burdensome regulations." *Exxon,* 437 U.S. at 127–28, 98 S.Ct. at 2214–15. That alternative routes will have to be found for the interstate shipment of construction material into Louisiana does not establish the existence of a burden upon interstate commerce. "[I]nterstate commerce is not subjected to an impermissible burden simply because an otherwise valid regulation causes some business to shift from one interstate supplier to another." *Id.* at 127, 98 S.Ct. at 2214. The Supreme Court's holding in *Exxon* is dispositive. In that case, Exxon and other oil producers challenged, on Commerce Clause grounds, a Maryland statute that prohibited oil producers and refiners from owning and operating retail gas stations within the state. The Maryland statute drew no distinction between in-state and out-of-state independent dealers. The Court found no burden on interstate commerce. *Id.* Although certain firms were effectively excluded from the market, there was no demonstrable decrease in the flow of oil into the state, and the statute did not discriminate against out-of-state dealers. *Id.* at 126–27, 98 S.Ct. at 2214–15. Harahan's ordinance has not been shown to decrease the amount of construction materials brought to Louisiana, nor has it been shown to discriminate among shippers.

■ Louisiana law protects the flow of interstate commerce down the Mississippi. Local governments are permitted to zone only private uses of the batture that cannot affect the flow of interstate trade. If they comply with state law, local governments can affect only the local market structure. Their lawful actions will not implicate the national market or the Commerce Clause, because that Clause does not protect any particular structure or method of operation in a retail market. *Id.* at 127, 98 S.Ct. at 2214, citing *Breard v. City of Alexandria,* 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951). The fact that Wood Marine has been excluded from the business of ship-

ping construction materials does not, without more, implicate the Commerce Clause.

## V.

The constitutionality of the Harahan zoning ordinance is properly reviewed by the same standard we employ to review statutes enacted by state legislatures. *Shelton v. City of College Station*, 780 F.2d 475, 479 (5th Cir.) (en banc), *cert. denied*, 477 U.S. 905, 106 S.Ct. 3276, 91 L.Ed.2d 566 (1986). In general terms, the ordinance will be upheld unless "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Id.* at 480, quoting *Moore v. City of East Cleveland*, 431 U.S. 494, 498 n. 6, 97 S.Ct. 1932, 1935 n. 6, 52 L.Ed.2d 531 (1977) (plurality opinion). Attacks against zoning ordinances under this test are rarely successful. *Id.* at 479. In today's case, the district court's analysis breaches this standard.

The district court concluded,

The court is ... sympathetic to the desire of Harahan to maintain the residential quality of the community which is located adjacent to this batture region. Nevertheless, Harahan can not arbitrarily and without reasonable circumspection zone this region so as to preclude operations which may or may not have the impact contemplated by the City. Quite simply, there is a lack of evidence that there is a legitimate local purpose inherent in the batture zoning ordinance, much less any evidence that the ordinance is even rationally related to achieving those ends.

As such, this Court has no option but to find that the batture ordinance is arbitrary and unreasonable in its operation to exclude Wood Marine's limestone operation.

The basis for this conclusion was the district court's finding that the city had produced no evidence to establish the efficacy of its ordinance. The district court erred in putting the city to this proof. Only under a Commerce Clause analysis, when interstate commerce is shown to be burdened, must a municipality substantiate

its legitimate purposes. *Raymond Motor Transp., Inc. v. Rice*, 434 U.S. 429, 444–45, 98 S.Ct. 787, 795–96, 54 L.Ed.2d 664 (1978). Zoning is a legislative function entitled to great deference. Harahan was not required to prove the truth of the legislative facts upon which its zoning ordinance is based. Rather, it was Wood Marine's burden to "convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmakers." *Shelton*, 780 F.2d at 479, quoting *Vance v. Bradley*, 440 U.S. 93, 110–11, 99 S.Ct. 939, 949–50, 59 L.Ed.2d 171 (1979). Wood Marine also challenged the ordinance under the Louisiana law that authorizes zoning by municipalities. This law proscribes arbitrary and unreasonable zoning by municipalities. La.Stat.Ann. § 33:4721. The challenge is governed by the same standard as for reviewing legislative rulemaking under the Constitution. *Bossier City Medical Suite v. City of Bossier City*, 483 F.Supp. 633, 647, 647 n. 30 (W.D.La.1980); *Hernandez v. City of Lafayette*, 399 So.2d 1179, 1181–83 (La.App. 1981), *appeal dism'd*, 455 U.S. 901, 102 S.Ct. 1242, 71 L.Ed.2d 440 (1982).

The history of Harahan's zoning ordinance demonstrates that the Board of Aldermen reasonably concluded the curtailment of further commercial development of the batture would further the community's interest in maintaining the city's residential quality. Harahan was not required to outline the year of study and discussion that went into the ordinance for the court. The ordinance freezes private commercial development at its present stage, preserving the status quo and thus logically protecting Harahan's existing neighborhoods.

## VI.

The decision of the lower court is reversed and the order granting permanent injunction is vacated.

REVERSED and injunction VACATED.