**CITY OF CLEVELAND, OHIO**
**A Municipal Corporation,**
**Plaintiff,**

v.

**CITY OF BROOK PARK, OHIO**
**A Municipal Corporation,**
**Defendant.**

**No. 1:94CV0079.**

United States District Court,
N.D. Ohio,
Eastern Division.

July 19, 1995.

James A. Laurenson, Ed E. Duncan, William J. Muniak, Arter & Hadden, Cleveland, OH, Michael Schneiderman, Michael M. Conway, Adam M. Kingsley, Hopkins & Sutter, Chicago, IL, for plaintiff.

David A. Lambros, City of Brookpark, Dept. of Law, Brookpark, OH, Perry M. Rosen, Dana C. Nifosi, Cutler & Stanfield, Washington, DC, for defendant.

### MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

The City of Cleveland brings this action pursuant to 28 U.S.C. § 2201 against the City of Brook Park. Cleveland seeks a declaratory judgment that certain of Brook Park's ordinances offend both the supremacy clause and the commerce clause of the United States Constitution, and an injunction against the enforcement of these ordinances. This Court's jurisdiction is premised upon the federal questions presented. Both parties move for summary judgment. For the reasons discussed below, Brook Park's motion for summary judgment is granted and Cleveland's motion for summary judgment is denied.

I.

The undisputed material facts follow.

Cleveland owns the Cleveland Hopkins International Airport, most of which is located within Cleveland city limits but some of which is located within the City of Brook Park. In 1990, Cleveland undertook a review of operations at the airport. This review resulted in a determination that, in order to meet projected increases in traffic, the airport would require certain modifications to correct several perceived deficiencies. Specifically, Cleveland found that 1) the airport's main runway and the parallel back-up runway are too close together; 2) the 7,095 foot back-up runway is too short to accommodate

certain departures; and 3) the runway-taxiway system is too intertwined.

Especially with respect to the first and third deficiencies, Cleveland noted potential safety problems. The proximity of the main and back-up runways, whose midpoints are 441 feet apart, prevents aircraft from simultaneously landing or taking off on both runways. In addition, maintenance work on one runway can interfere with flight operations on the other. The length of the back-up runway also renders that runway unavailable to certain large planes commonly used in international flights. Finally, the multiple intersections between the runways and the taxiways serve to complicate coordination of aircraft operations.

In 1992, Cleveland publicly announced plans to address these deficiencies through a revised Airport Master Plan. The plan proposes extension of an existing runway to 10,800 feet, as well as construction of a new 8,500 foot runway. Much of this second runway would be located on property within Brook Park; at least some of this land is not yet owned by Cleveland. Cleveland intends to purchase this land to put its plan into effect. This would entail purchasing all of Brook Park located south of the airport, so that western Brook Park would be geographically separated from the remainder of the city. On August 16, 1993, Cleveland submitted a proposed Airport Layout Plan ("ALP") to the Federal Aviation Administration ("FAA") for approval. That ALP is currently under review.

In 1993, Brook Park undertook a review of its Planning and Zoning Code. In October 1993, Brook Park amended its ordinances related to land use. Brook Park first repealed Ordinance 4051–1971, which prohibited the construction of new runways within the city. Brook Park then enacted ordinances establishing procedures for the obtaining of a conditional use permit. One of these, Ord. 7860–1993, requires any landowner to obtain a conditional use permit for new airport construction. Ordinance 7859–1993 requires that landowners describe how any proposed construction will comport with Brook Park's master plan. Ordinance 7862–1993 provides a mechanism through which

government entities can obtain a waiver of the conditional use application requirement. Similarly, Ord. 7863–1993 allows any government entity to apply for immunity from all zoning ordinances. Brook Park also enacted Ord. 7864–1993, which established noise levels to be used as a planning tool in assessing the impact of new construction. The ordinance does not impose mandatory noise levels in any zoning area.

The net effect of these ordinances is that Cleveland can expand the airport within its existing boundaries if it first obtains a conditional use permit to do so or obtains immunity from the zoning ordinances. Certain property Cleveland wishes to acquire is not zoned for construction of runways; however, Cleveland could seek immunity from the zoning ordinances with respect to that property as well.

## II.

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law . . .

Rule 56(e) specifies the materials properly submitted in connection with a motion for summary judgment:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein . . . The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in

this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *White v. Turfway Park Racing Assn., Inc.,* 909 F.2d 941, 943–44 (6th Cir.1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. at 2512.

### III.

Cleveland maintains both that Brook Park's ordinances are preempted by federal law, and that those ordinances offend the commerce clause. Each of these issues is discussed in turn below.

■ A. The supremacy clause of the United States Constitution states:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. Art. VI, cl. 2. Thus, where state and federal law are in conflict, federal law supersedes state law if it is Congress' clear and manifest intent that federal law should have preemptive effect. *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 229–231, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). Congress is presumed not to have intended to preempt areas of traditional state regulation, although this presumption is rebuttable. *Metropolitan Life Insurance Co. v. Massachusetts,* 471 U.S. 724, 739–741, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985); and *California v. ARC America Corp.,* 490 U.S. 93, 100–102, 109 S.Ct. 1661, 1665, 104 L.Ed.2d 86 (1991).

■ Congress can express its intent regarding preemption in one of three ways. First, Congress can expressly preempt, or decline to preempt, state law in an enactment. *Metropolitan Life,* 471 U.S. at 746–748, 105 S.Ct. at 2393. Second, Congress can implicitly manifest its preemptive intent through an enactment that actually conflicts with state law, such that compliance with both state and federal law is impossible or such that compliance with state law would frustrate the purpose of the federal legislative scheme. *Id.;* and *Gustafson v. City of Lake Angelus,* 856 F.Supp. 320, 324 (E.D.Mich.1993). Third, Congress can demonstrate an implicit intent to preempt state law by enacting legislation that occupies an entire field of regulation. *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 515–16, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992). Preemption is to be inferred from an act of Congress only where Congress has not expressly stated its intent with respect to preemption. *Id.* That is to say, "Congress' enactment of a provision defining the preemptive reach of a statute implies that matters beyond that reach are not preempted." *Id.*

Congress has enacted several pieces of legislation relating to airports and aviation which Cleveland suggests operate to preempt Brook Park's ordinances. The Federal Aviation Act, 49 U.S.C. § 40101 *et seq.,* governs the use of navigable airspace over the United

States. Section 40103 provides that the United States has exclusive sovereignty over airspace over the United States, and that the FAA shall develop plans and policies for its use. The Noise Control Act, 49 U.S.C. § 44715 *et seq.*, governs the regulation of noise levels at and around airports. Finally, the Airport and Airway Improvement Act ("AAIA"), 49 U.S.C. § 47101 *et seq.*, governs the process though which proprietors of airports can obtain federal funding for the construction of airport improvements.

None of these statutes expressly preempts state or local zoning or land use laws. Any preemptive effect of these statutes on zoning laws, then, must be the result of Congress' implied intent. Both of the ways in which this intent could be inferred are discussed below.

### 1. *Actual Conflict*

As discussed above, an actual conflict between local and federal law exists where either 1) it is impossible to comply with both local and federal law; or 2) compliance with local law would totally frustrate the objectives of the federal legislation.

### a. *Impossibility of compliance*

■ At first blush, two of the federal statutes upon which Cleveland relies may appear to convey a command that cannot be obeyed without running afoul of at least one of Brook Park's ordinances. The first is a potential conflict between the Noise Control Act and Brook Park's Ord. No. 7864–1993. The Noise Control Act and the regulations promulgated under it set out permissible noise levels at and around airports. Brook Park's ordinance does not establish any mandatory maximum noise level within any area of Brook Park. Instead, the ordinance sets out guidelines to be taken into account by the appropriate agencies of city government in planning for land uses compatible with the city's master plan. It is entirely possible to comply with both these provisions, therefore, since the ordinance in no sense attempts to prohibit noise at any specific level.

■ The second potential conflict is that between the AAIA and Brook Park's ordinances requiring the proprietor of an airport to obtain a conditional use permit prior to beginning construction. The AAIA, however, does not purport to set out mandatory requirements governing the construction of airport runways. Instead, it lays out the requirements for obtaining federal funding for such a construction project.[1] *City of Grapevine, Tex. v. Department of Transportation,* 17 F.3d 1502, 1503 (D.C.Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 635, 130 L.Ed.2d 542 (1994) (FAA's approval of an ALP constitutes a finding that the ALP is eligible for federal funding); *see also Citizens Against Burlington, Inc. v. Busey,* 938 F.2d 190, 197 (D.C.Cir.1991), *cert. denied,* 502 U.S. 994, 112 S.Ct. 616, 116 L.Ed.2d 638 (1991) (citing an environmental impact statement prepared by FAA for proposition that FAA reviews ALPs for funding eligibility, not for purpose of deciding where or whether to build airports). Thus, the AAIA sets out no requirements with which it would be impossible to comply while complying with local ordinances; even assuming the existence of otherwise competing local and federal regulations, an airport proprietor could choose to comply with both simply by foregoing federal funding. While such a decision may be less than practical, compliance with both the AAIA and Brook Park's zoning laws is not legally impossible.

### b. *Frustration of federal purpose*

■ Two possible conflicts between Brook Park's ordinances and Congress' objectives in enacting the statutes at issue here are present, at least superficially: 1) conflict between Brook Park's noise ordinance and the Noise Control Act, and 2) conflict between Brook Park's conditional use ordinances and the AAIA. The Noise Control Act regulates the allowable noise level resulting from aircraft operation. Brook Park's ordinance, which serves as a planning tool and does not set out mandatory noise levels,

---

1. 49 U.S.C. § 47104(a) authorizes the Secretary of Transportation to make project grants from the Airport and Airway Fund. No section of the statute authorizes the promulgation of any regulations, or sets out any requirements, regarding airport construction projects other than those necessary to obtain federal funding.

does not frustrate the purpose of the Noise Control Act in any way.

■■■ The AAIA, according to the statute itself, serves the purpose of providing federal funding to airport construction projects to promote a wide variety of policy goals. Among these is that "airport construction and improvement projects that increase the capacity of facilities to accommodate passenger and cargo traffic be undertaken to the maximum feasible extent so that safety and efficiency increase and delays decrease." 49 U.S.C. § 47101(a)(7). The statute also seeks, *inter alia*, to promote environmental protection, noise control, reduction of non-compatible land uses in areas surrounding airports, consistency with the Federal Aviation Act, and the development of a national intermodal transportation system. An additional purpose of the statute is to foster cooperation with state and local governments:

To carry out the policy of subsection (a)(5) of this section [2], the Secretary of Transportation shall cooperate with State and local officials in developing airport plans and programs that are based on overall transportation needs. The airport plans and programs shall be developed in coordination with other transportation planning and considering comprehensive long-range land use plans and overall social, economic, environmental, system performance, and energy conservation objectives. The process of developing airport plans and programs shall be continuing, cooperative, and comprehensive to the degree appropriate to the complexity of the transportation problems.

49 U.S.C. § 47101(g). In order to effectuate these purposes, Congress provided a mechanism to encourage airport development consistent with them. Specifically, the AAIA provides a means through which airport proprietors can obtain federal financing to support airport development and improvement projects, if those projects are consistent with the statutory purpose.

Particularly in light of the mechanism Congress chose to implement its goals, Brook Park's ordinances do not undermine the purposes underlying the AAIA. The ordinances requiring Cleveland to obtain a conditional use permit before beginning construction on land within Brook Park will ensure that any development will be consistent with Brook Park's land use goals. This consistency does not collide with Congress' purpose of encouraging airport development in conformity with certain policy goals through providing federal funding for such projects. It may well be the case that development of a specific airport in a particular manner is inconsistent with local land use ordinances. However, a city's application of those ordinances to a particular development plan does not undermine the AAIA's purpose of encouraging airport improvement through federal funding. It is to encourage and facilitate airport improvement generally—consistent with certain policy goals—that the AAIA was enacted. The failure of a particular proposal to be implemented does not necessarily frustrate this general purpose.

Cleveland argues that, because the AAIA has as one policy goal cooperation with local governments and consistency with local land use requirements, the AAIA preempts local consideration of such issues. That the FAA, in considering a funding request, is directed to consider these issues does not, however, suggest in any way that local governments are precluded from doing so. Indeed, the statute speaks of "cooperation;" it would be inconsistent with the AAIA's stated goal of fostering cooperation to substitute the FAA's authority for the traditional power of states and localities to regulate land use within their boundaries.

Brook Park's ordinances do not conflict with any relevant federal statute.

### 2. *Occupation of the regulatory field*

Cleveland maintains that the Federal Aviation Act, the Noise Control Act, and the AAIA each contain regulations that are sufficiently broad in scope to preempt any local regulations on the same subject. Cleveland

**2.** Section 47101(a)(5) provides that it is United States policy "to encourage the development of transportation systems that use various modes of transportation in a way that will serve the States and local communities efficiently and effectively."

then suggests that Brook Park's challenged ordinances constitute regulation within these subjects. The ordinances at issue, however, do not intrude upon the regulatory territory of any of these acts.

### a. *Federal Aviation Act*

■ The Aviation Act provides in part that the United States possesses exclusive jurisdiction over the airspace of the United States, and that the FAA is charged with developing policy for the use of this airspace. 49 U.S.C. § 40103(a) and (b). The Act, which provides authority for the promulgation of extensive regulations governing aircraft operations, occupies the field of regulation on that subject and therefore preempts local ordinances that purport to regulate the operation of aircraft. *Gustafson v. City of Lake Angelus*, 856 F.Supp. 320, 325–326 (E.D.Mich.1993); and *Blue Sky Entertainment, Inc. v. Town of Gardiner*, 711 F.Supp. 678, 693 (N.D.NY 1989) (local ordinance regulating parachute jumping preempted because parachute jumping constitutes aircraft operation).

■ The ordinances at issue here, however, do not attempt to regulate the same subject as that addressed by the Aviation Act. The Aviation Act preempts only that regulation which affects aircraft operation or certain other specific areas of regulation outlined in the statute. Both of the cases noted above, for example, concerned matters related to the actual operation of aircraft. *Gustafson* struck down an ordinance prohibiting the landing of sea planes on an inland lake and setting minimum altitude requirements for planes flying over the city. In doing so, the court noted that regulations concerning the landing of aircraft and the altitude at which they can fly are directly related to aircraft operation. The court distinguished

land use regulations, because such ordinances do not directly regulate aircraft flight operations. *Gustafson*, 856 F.Supp. at 326 n. 3.

In *Blue Sky*, the district court held that a town law regulating parachute jumping was preempted by the Aviation Act because it was directly related to the flight operations of aircraft. The court noted that 14 C.F.R. § 105.1 contains explicit regulations of parachute jumps, and that this reflects the FAA's "pervasive [authority] in the realm of parachute jumping." *Blue Sky*, 711 F.Supp. at 693. The court distinguished an ordinance requiring local airports to obtain a license to operate, and distinguished as well local efforts to enforce the licensing requirement, holding that the Aviation Act does not preempt this sort of local regulation. *Id.*

Cleveland points to a recent district court decision in purported support of the proposition that the Aviation Act occupies the field of regulation pertaining to the placement of physical facilities: *United States v. City of Berkeley*, 735 F.Supp. 937, 940 (E.D.Mo. 1990). The court there held that a local ordinance requiring the FAA to obtain a permit prior to constructing a radar installation was preempted by the Aviation Act. In so holding, the court pointed out that the Aviation Act explicitly gives the FAA the power "to acquire, establish, and improve air-navigation facilities wherever necessary." *City of Berkeley*, 735 F.Supp. at 940, *citing* 49 U.S.C.App. § 1348(b)(1).[3] The court held that a local permit requirement is inconsistent with this specific grant of authority to the FAA. *Id.* This is distinct from the placement of runways; nothing in the Aviation Act or the regulations promulgated under it provides the FAA the authority to construct runways or airports.

---

**3.** Title 49 U.S.C.App. § 1348(b)(1) was amended in 1994 by 49 U.S.C. § 44502(a)(1). The new section provides: "[t]he Administrator of the Federal Aviation Administration may ... acquire, establish, improve, operate, and maintain air navigation facilities." An "air navigation facility" is defined as:

a facility used, available for use, or designed for use, in aid of air navigation, including ... a landing area; ... a light; ... apparatus or equipment for distributing weather informa-

tion, signaling, radio-directional finding, or radio or other electromagnetic communication; and ... another structure or mechanism for guiding or controlling flight in the air or the landing and takeoff of aircraft.

49 U.S.C. § 40102(a)(4). This is distinct from an "airport," which is "a landing area used regularly by aircraft for receiving or discharging passengers or cargo." 49 U.S.C. § 40102(a)(9). Not all "landing areas" are "airports." 49 U.S.C. § 40102(a)(28).

In each of the preceding three cases, courts held that local ordinances were preempted when they attempted to regulate directly the flight operations of aircraft or when they intruded on a specific grant of statutory authority to the FAA. No such regulation is at issue here. While it is certainly true that runway placement will have some tangential effect on flight operations, the question of whether and where to construct a runway does not substantially affect the use of airspace.

Further support for the distinction between the direct regulation of aircraft flight operations and regulation of land use is to be found in the FAA's policy statements. In a context which is admittedly somewhat distinct from the question here at issue, the FAA has disavowed any authority to supplant local land use ordinances. 60 Fed.Reg. 14701 (March 20, 1995). The FAA there states, in a proposed policy statement on noise mitigation measures pursuant to 14 C.F.R. Part 150:

> Public controls on the use of land are commonly exercised by zoning. Zoning is a power reserved to the states under the U.S. Constitution. It is an exercise of the police powers of the states that designates the uses permitted on each parcel of land. This power is usually delegated in state enabling legislation to local levels of government. Neither the FAA nor any other agency of the Federal government has zoning authority.

Although the FAA did not make this statement in the context of the Aviation Act, the FAA's clear statement of policy is applicable in any context: the FAA does not possess zoning authority merely by virtue of its broad mandate to regulate matters relating to aviation.

Cleveland points to a Ninth Circuit decision in support of the contrary proposition: *Burbank–Glendale–Pasadena Airport v. Los Angeles,* 979 F.2d 1338 (9th Cir.1992). Without analysis, the court there held that "[t]he proper placement of taxiways and runways is critical to the safety of takeoffs and landings and essential to the efficient management of the surrounding airspace. The regulation of runways and taxiways is thus a direct interference with the movements and operations of aircraft, and is therefore preempted by federal law." *Id.* at 1341.

This Court declines to follow the Ninth Circuit's reasoning. That Court's view of the scope of the Aviation Act is simply broader than that implied in any reasonable reading of the statute. The Aviation Act grants to the FAA authority to regulate the use of airspace, but this does not of necessity lead to the conclusion that localities are no longer free to regulate the use of land within their borders, even where land use regulations may have some tangential impact on the use of airspace. Cleveland's argument to the contrary would perforce lead to the conclusion that the FAA has power to direct a locality to accept the initial siting of an airport within its borders; even Cleveland disavows this position. *Plaintiff's Brief in Support of Motion for Summary Judgment,* at 26; *see also Condor Corporation v. City of St. Paul,* 912 F.2d 215 (8th Cir.1990) (city's zoning ordinance prohibiting initial siting of heliport not preempted by federal law). In light of the analysis above, this Court does not adopt the reasoning of the *Burbank–Glendale–Pasadena* court.

The Federal Aviation Act does not occupy the field of land use regulations in such a way so as to preempt Brook Park's ordinances.

### b. *Noise Control Act*

■ The Noise Control Act authorizes the administrator of the FAA, in conjunction with the Environmental Protection Agency, to promulgate "regulations to control and abate aircraft noise and sonic boom." 49 U.S.C. § 44715(a)(1)(B). This statute occupies the field of regulations aimed at the abatement of aircraft noise. *City of Burbank v. Lockheed Air Terminal, Inc.,* 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973). The Court in *Burbank* struck down a local ordinance which imposed a curfew on takeoffs from an airport in order to abate the resultant noise during certain hours of the day. The ordinance was preempted because "the pervasive control vested in EPA and in FAA under the [Noise Control Act] seems to us to leave no room for local curfews or other local controls." *Id.* at 638, 93 S.Ct. at 1862.

Brook Park's noise ordinance is of a substantially different character than that at issue in *Burbank*. The ordinance does not attempt to establish a mandatory noise level, nor does it impose any requirement on the operators of aircraft with which they must comply. The ordinance does not affect the flight operations of aircraft, as did the curfew imposed by Burbank. *Cf. Faux–Burhans v. County Commissioners of Frederick County*, 674 F.Supp. 1172 (D.Md.1987), *aff'd* 859 F.2d 149 (4th Cir.1988) (zoning ordinance governing intensity of airport use, required take-off distance, set back requirements, and type of flight not preempted by Noise Control Act because not related to noise control or the use of navigable airspace). Instead, the ordinance serves to inform Brook Park's zoning decisions. That is, the ordinance directs Brook Park's planning commission to consider the impacts of noise levels in determining the appropriate use of land within its territorial jurisdiction. Simply put, Brook Park has not imposed any control over noise levels. The ordinance is not a regulation within the preemptive scope of the Noise Control Act.

c.  *Airport and Airway Improvement Act*

■ As discussed in section 1 above, the AAIA provides a mechanism through which the FAA is to determine whether to provide federal funding to airport development and improvement projects. The Act imposes no requirements, nor does it authorize the promulgation of any regulations, that govern airports generally or that govern projects for which no federal funding is being sought. Local ordinances that do regulate in these ways, therefore, simply do not intrude upon the field of regulation occupied by the AAIA. Brook Park's ordinances do not purport to address the eligibility of the proposed project at Hopkins Airport for federal funding. Consequently, Brook Park's ordinances do not fall within the regulatory field of the AAIA.

d.  *Aggregate effect of the statutes*

■ Cleveland suggests that the regulatory scope of each individual statute aside, the three relevant statutes in the aggregate, intrude upon a field of federal regulation that is sufficiently broad to include Brook Park's

ordinances. This argument, though novel, is without merit. Cleveland cites no authority, and this Court has located none, to support the proposition that several statutes, none of which alone preempts an ordinance, can be read together to reflect a general occupation of a regulatory field not occupied by any of the statutes singly. This proposition is the result of a misunderstanding of "occupation of the field" analysis. Such an analysis is simply a shorthand for determining, through logical inference, Congress' intent in enacting a particular statute. To attempt such an inference of intent in the aggregate, where it cannot be found underlying any one individual statute, would divorce the question of Congressional intent from a construction of any particular statute. This Court cannot accept Cleveland's invitation to engage in such a project.

3.  *Conclusion*

The Federal Aviation Act, the Noise Control Act, and the AAIA contain no express preemption of local land use ordinances. Preemptive intent is not implicit in any of these statutes through application of any of the devices used to determine such intent. Brook Park's ordinances, therefore, are not preempted by any of these statutes.

■ B.  The commerce clause of the United States constitution provides that "[t]he Congress shall have power ... to regulate Commerce with foreign nations, and among the several states, and with the Indian tribes." U.S. Const. Art. I, § 8. By negative implication, the "dormant" commerce clause limits the powers of states to regulate commerce even in the absence of Congressional action. *CTS Corp. v. Dynamics Corp. of America*, 481 U.S. 69, 107 S.Ct. 1637, 95 L.Ed.2d 67 (1987). "The principal objects of dormant Commerce Clause scrutiny are statutes that discriminate against interstate commerce." *Id.* at 86–87, 107 S.Ct. at 1648. Just as are states, municipal governments are bound by the restrictions of the Commerce Clause. *Wood Marine Service Inc. v. City of Harahan*, 858 F.2d 1061, 1064 (5th Cir.1988), *citing Dean Milk Co. v. City of Madison*, 340 U.S. 349, 352–354, 71 S.Ct. 295, 297, 95 L.Ed. 329 (1951).

■ In light of the commerce clause's targeting of discriminatory measures, the courts have developed a graduated level of review of state actions that responds to the type of regulation at issue. Where a state regulation amounts to "simple protectionism"—because it discriminates against interstate commerce either on its face or in effect—it is subject to a heightened level of scrutiny that amounts to a virtually *per se* rule of invalidity. *City of Philadelphia v. New Jersey,* 437 U.S. 617, 622–624, 98 S.Ct. 2531, 2535, 57 L.Ed.2d 475 (1978); *Bacchus Imports, Ltd. v. Dias,* 468 U.S. 263, 268–272, 104 S.Ct. 3049, 3054–3055, 82 L.Ed.2d 200 (1984); and *Norfolk Southern Corp. v. Oberly,* 822 F.2d 388, 400 (3rd Cir.1987). This "heightened scrutiny" test is also applicable to statutes that "adversely affect interstate commerce by subjecting activities to inconsistent regulations." *CTS Corp.,* 481 U.S. at 88, 107 S.Ct. at 1649; and *Old Bridge Chemicals v. N.J.D.E.P.,* 965 F.2d 1287, 1291 (3rd Cir. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 602, 121 L.Ed.2d 538 (1992) (state actions that undermine uniformity in areas of particular federal importance warrant heightened scrutiny). On the other hand, "[w]here the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970); and *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 471–473, 101 S.Ct. 715, 728, 66 L.Ed.2d 659 (1981).

In determining whether the heightened scrutiny test is applicable, then, this Court must decide 1) whether Brook Park's ordinances discriminate against interstate commerce and 2) whether the ordinances will subject the airport's important interstate activities to inconsistent regulation by different states. The ordinances at issue here do neither.

■ Regulations that do not place a heavier burden on out-of-state commerce than they place on in-state commerce may burden commerce generally, but they do not discriminate against interstate commerce. *CTS Corp.,* 481 U.S. at 87–89, 107 S.Ct. at 1649; and *Old Bridge Chemicals,* 965 F.2d at 1295. Brook Park's zoning ordinances do not impose any burden on out-of-state commerce that is not imposed on in-state commerce; in no sense do the ordinances favor commerce within the state of Ohio over that without the state. The airport, owned by the City of Cleveland, may be subject to zoning requirements that affect its business. However, because the airport is located within Ohio, this can hardly be said to favor Ohio commerce over that of another state. To the extent that Brook Park's ordinances could have an effect on air carriers, that effect is not controlled by whether the carrier is located within or without Ohio. Brook Park's ordinances do not discriminate against interstate commerce.

Brook Park's ordinances also do not subject the airport to inconsistent regulations from different states. Similarly, the fact that Congress has not preempted Brook Park's ordinances indicates that the ordinances do not fly in the face of a federal interest so overwhelming as to render any state or local regulation an intrusion upon interstate commerce. *See Old Bridge Chemicals,* 965 F.2d at 1292. As with Cleveland's preemption argument, Cleveland's argument to the contrary proves too much: if local land use laws as potentially applied to airports intruded impermissibly upon interstate commerce, no locality could constitutionally decide not to permit construction of an airport within its jurisdiction in the first instance.

Consequently, Brook Park's ordinances are invalid only if their incidental effect on interstate commerce so outweighs their putative benefits that the ordinances are irrational or unreasonable (*Alaska Airlines Inc. v. City of Long Beach,* 951 F.2d 977, 983 (9th Cir. 1991)), and if there exists a less burdensome alternative to further Brook Park's legitimate interests. *Clover Leaf Creamery,* 449 U.S. at 471–473, 101 S.Ct. at 728. States are generally not prohibited from making zoning decisions, even those that incidentally affect interstate commerce. *Guschke v. City of Oklahoma City,* 763 F.2d 379, 384 (10th Cir. 1985); *see also Wood Marine Service, Inc.,*

858 F.2d at 1066 (state and local zoning decisions are entitled to great deference in context of commerce clause review).

As discussed above, Brook Park's ordinances do not burden interstate commerce, as opposed to commerce generally. Interstate commerce is affected primarily to the extent that the airport will be less able to attract increased traffic from out-of-state carriers, as well as in-state carriers, because of Brook Park's ordinances. This is an incidental effect. Against this weighs Brook Park's substantial interest in determining the appropriate use of land within its borders and the fact that an alternative approach to that goal less burdensome than adopting zoning regulations is far from apparent. The effect of Brook Park's ordinances on interstate commerce is not clearly excessive when weighed against the benefits to Brook Park of being left free to regulate land use within its borders.

Brook Park's ordinances do not offend the commerce clause.

### IV.

The challenged ordinances are not preempted by any federal law and therefore do not offend the supremacy clause. In addition, the ordinances do not violate the commerce clause. No material facts remain in issue and Brook Park is entitled to judgment in its favor as a matter of law. Therefore, Brook Park's motion for summary judgment is granted and Cleveland's motion is denied. Judgment is entered in favor of Brook Park.

This order is final and appealable.

IT IS SO ORDERED.