## In re COMMERCIAL AIRFIELD
## (Edward V. Peet, Appellant)

[752 A.2d 13]

No. 99-079

January 27, 2000. Appellant Edward V. Peet owns an airport in Cornwall, Vermont. Due to certain improvements to his airport and associated flight activities, the District Environmental Commission informed him that he needed to apply for a permit pursuant to 10 V.S.A. §§ 6001-6092 ("Act 250"). Appellant objected to this requirement on the basis that Act 250 was preempted by federal law and petitioned the Environmental Board for a declaratory ruling. The Environmental Board held an evidentiary hearing and affirmed the District Commission's jurisdictional opinion requiring appellant to obtain an Act 250 permit. On appeal, appellant again argues that Act 250 jurisdiction is preempted by federal aviation law. We disagree and affirm.

Appellant's airport is located within the 600-acre Peet farm. It is comprised of a runway and a maintenance shop. Aircraft maintenance services are performed within the shop. A crop-dusting company servicing local farms operates out of the airport. The Environmental Board determined that appellant was required to apply for a permit under Act 250 for this airport and its aviation-related activities. See 10 V.S.A. § 6001(3).

While the Environmental Board made numerous findings of fact and conclusions of law, the only issue on appeal is whether the Environmental Board's application of Act 250 to appellant's property is preempted by federal law. We generally defer to the Environmental Board's interpretation of Act 250. See *In re Killington, Ltd.*, 159 Vt. 206, 210, 616 A.2d 241, 244 (1992) (citations omitted). We also defer to the Environmental Board's conclusions of law if they are rationally derived from the correct interpretation of law and find-

ings of fact based on substantial evidence. See *id.* We "have often recognized the Board's special expertise in determining . . . . the scope of its authority." *In re Stokes Communications Corp.*, 164 Vt. 30, 35, 664 A.2d 712, 715 (1995).

The United States Constitution provides that "the Laws of the United States . . . shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2. This supremacy clause allows for the federal preemption of state and local laws. See *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992) (citations omitted). There are four ways in which federal law can preempt state law: explicit or implicit statutory language, actual conflict, or occupation of the field. See *id.*

Appellant argues that federal regulations pervasively and fully occupy the field of aviation, thereby preempting all state laws related to aviation.[1] Appellant frames the question as whether federal law has fully occupied the field of aircraft operation. The appropriate and narrower question is whether the federal government has fully occupied the field of land use as it relates to aircraft operation.

The purpose of the Federal Aviation Act (the "Aviation Act") is "to promote air traffic safety." See *Bullwinkel v. Federal Aviation Admin.*, 23 F.3d 167, 169 (7th Cir. 1994). In contrast, Act 250 was enacted in order to "protect and conserve the environment of the state." See *In re Juster Assocs.*, 136 Vt. 577, 580, 396 A.2d 1382, 1384 (1978) (citing 1969, No. 250 (Adj. Sess.), § 1). It is difficult to see how the local land-use regulations promulgated under Act 250 could encroach on

---

[1] Appellant makes the additional argument that the commerce clause precludes the Environmental Board from regulating private activity. This argument is inadequatly briefed and will not be considered by the Court. See V.R.A.P. 28(a)(4); *Johnson v. Johnson*, 158 Vt. 160, 164 n.*, 605 A.2d 857, 859 n.* (1992).

territory that the federal government, through the Aviation Act, has reserved for itself.

It is well-established that the Aviation Act gives the Federal Aviation Administration exclusive jurisdiction over airspace in the United States. See 49 U.S.C.A. §§ 40101-50105; *City of Burbank v. Lockheed Air Terminal, Inc.*, 411 U.S. 624, 627 (1973). The issue here, however, is the extent to which the Aviation Act and regulations of the FAA and other federal agencies preempt local land-use regulations. The Board's careful review of the intersection between federal aviation policies and local land use regulation concluded that no conflict existed.

There are two ways in which the FAA's authority intersects with land-use issues. First, the Aviation Act provides that the Environmental Protection Agency will assist them on airport development projects to ensure there is no significant impact on natural resources, water and air quality, and other environmental concerns. See 49 U.S.C.A. § 47101(h). This policy applies to developments at airports falling within certain guidelines, for example, large size, number of flights and number of passengers. See *id.* § 47102 (definitions of "airport development," "public airport," etc.). The Peet Airport is small and privately-owned, thereby exempting it from these guidelines.

Second, the FAA conducts aeronautical studies to determine the appropriateness of airport construction and deactivation, which may relate to land-use issues. See 14 C.F.R. § 157.7. The FAA considers factors such as traffic patterns of neighboring airports, the effect on existing airspace structure and projected programs of the FAA, and the impact of existing or proposed manmade structures. See *id.* The regulation explicitly states that any decision related to airport construction or deactivation "does not relieve the proponent of responsibility for compliance with any local law, ordinance or regulation, or state or other [f]ederal regulation. Aeronautical studies and determinations will not consider environmental or land use compatibility impacts." *Id.* These regulations demonstrate that "environmental impact and land use compatibility are matters of local concern and will not be determined by the FAA." *Gustafson v. City of Lake Angelus*, 76 F.3d 778, 785 (6th Cir. 1996). We agree with the Board's conclusion that although the federal government has preempted certain aspects of aircraft and airport operation, it has not preempted land use issues such as zoning and environmental review.

Further evidence of the FAA's lack of authority in governing land-use issues is provided in *Blue Sky Entertainment, Inc. v. Town of Gardiner*, 711 F. Supp. 678, 683 (N.D.N.Y. 1989). An action was brought challenging the validity of a town ordinance regulating small airports and parachute-jumping centers. The FAA provided a letter to the town in which it noted that certain portions of the ordinance, including aircraft operations and aircraft noise, were "preempted by federal regulation of the field." *Id.* The letter went on to specifically state "[t]o the extent the ordinance regulates land use in the Town of Gardiner, it is not preempted by federal regulation of aviation." *Id.* The federal district court relied in part on this FAA letter in affirming that the town could require the airports to apply for a license and stated there was no evidence "how a mere requirement of a license [under the ordinance] is preempted by federal law." *Id.* at 693.

Appellant cites various cases as proof that the federal government has in place a pervasive scheme of aviation regulations that preempts any state or local land-use laws. His reliance on these cases is misplaced because they address the FAA's control over navigable airspace and aviation safety. See *Abdullah v. American*

*Airlines, Inc.*, 181 F.3d 363, 367 (3d Cir. 1999) (federal law preempts standards for air safety); and *City of Burbank*, 411 U.S. at 638 (FAA regulates flow of air traffic and, by extension, aircraft noise). Here, there has been no attempt by the Environmental Board to regulate air safety or aircraft noise. The Environmental Board is simply requiring that appellant apply for an Act 250 permit.

Appellant relies most heavily on a Ninth Circuit case where the court held that federal law preempted a city ordinance that attempted to govern a runway expansion project. See *Burbank-Glendale-Pasadena Airport Authority, Inc. v. City of Los Angeles*, 979 F.2d 1338, 1341 (9th Cir. 1992). Appellant argues that this case is analogous to his situation because it illustrates that federal laws have preempted expansion projects at established airports. The case more accurately shows that the FAA is primarily involved with safety and airspace issues. The Ninth Circuit accepted the lower court's determination that the runway expansion would improve safety and reduce aircraft noise. See *id.* at 1339. As previously stated, the FAA has authority over air safety concerns and aircraft noise regulations. See *City of Burbank*, 411 U.S. at 627. Thus, the court found that the regulation, which attempted to interfere with the movements and operation of aircraft, was preempted. Because Act 250 is concerned with environmental and land-use issues, *Glendale-Pasadena* does not offer a relevant analogy.

In addition, we find the Ninth Circuit's cursory review of the preemption issue unhelpful in this situation and decline to follow their holding. Cf. *City of Cleveland v. City of Brook Park*, 893 F. Supp. 742, 751 (N.D. Ohio 1995) (Ninth Circuit's "view of the scope of the Aviation Act is simply broader than that implied in any reasonable reading of the statute.").

We conclude that the federal government has not pervasively occupied the field of land-use regulations relating to aviation. Therefore, the Environmental Board was correct in determining that appellant may be required to apply for an Act 250 permit[2] and that such requirement is not preempted by federal law.

*Affirmed.*

---

[2] As the Environmental Board acknowledges in its opinion, while the requirement to apply for an Act 250 permit is not preempted, certain conditions stipulated by an Act 250 permit may be preempted. Because appellant has not yet taken the first step of applying for an Act 250 permit, this question is premature.