STATE OF VERMONT

ENVIRONMENTAL COURT

|  | } |  |
|---|---|---|
| In re: State of Vermont Agency of Transportation | } | Docket No. 188-10-04 Vtec |
| (Caledonia County State Airport) | } | |
|  | } | |

### Decision and Order on Cross-Motions for Summary Judgment

Appellant-Applicant State of Vermont Agency of Transportation (Vermont Agency of Transportation or "VTrans") appealed from certain conditions imposed by the Zoning Board of Adjustment (ZBA) and Planning Commission of the Town of Lyndon, in their respective grants of conditional use approval and site plan approval for the expansion of the Caledonia County State Airport.

Appellant-Applicant Vermont Agency of Transportation is represented by Trevor R. Lewis, Esq.; the Town is represented by Franklin L. Kochman, Esq.; and Interested Persons Gene Arnoff, Catherine M. Boykin, Herbert DiGioia, Rita DiGioia, Carl Edwards, Lizbeth Edwards, Barbara Hill, Phyllis H. Josselyn, David A. Lussier, Steven Mitchell, Sr., James R. Tobin, Allen D. Young, Alley Young, and Bethany Young, appeared and represent themselves. The Vermont Agency of Transportation and the Town have each moved for summary judgment. The following facts are undisputed unless otherwise noted.

The Vermont Agency of Transportation owns a 78-acre parcel on the westerly side of Pudding Hill Road in a Commercial zoning district of the Town of Lyndon, on which it operates the Caledonia County Airport. The property surrounding the airport is in the Rural Residential zoning district.

The Caledonia County Airport does not serve passenger-carrying operations at a level requiring certification by the Federal Aviation Administration (FAA). 14 C.F.R. Part

1

139. Airports must receive FAA certification only if they either serve scheduled passenger-carrying operations of an air carrier operating aircraft designed for more than nine passenger seats, 14 C.F.R. §139.1(a)(1), or if they serve unscheduled passenger-carrying operations of an air carrier operating aircraft designed for at least thirty-one passenger seats, 14 C.F.R. §139.1(a)(2).

An airport location beacon, that is, a beacon visible from the air at night to identify the general location of the airport on the ground, is not required by the FAA if an airport does not require FAA certification. If one is installed, however, it must meet certain specifications. For a civilian airport such as the Caledonia County Airport the specifications of an airport location beacon require that it use a green-and-white rotating light. Specifications for airport location beacons, covering their flash rate, duration, color, light intensity and visibility, are provided in Advisory Circular 150/5345-12E. The airport location beacon proposed for the Caledonia County Airport is proposed to rotate at a rate of twenty-four times per minute, making twelve white flashes alternating with twelve green flashes per minute. 14 C.F.R. § 139.311(c)(3). Prior to the applications discussed in this decision, the Caledonia County Airport had no airport location beacon.

In September of 2003, the Vermont Agency of Transportation received site plan and conditional use approval from the Planning Commission and the ZBA to upgrade some of the lighting systems at the Caledonia County Airport. The lighting at the airport formerly was insufficient to allow the FAA to authorize landings at night under instrument flight rules, that is, when poor visibility limits the visual information available to pilots for navigation. The runway lights were too dim, and the airport lacked hazard beacons and obstruction lights.

In their 2003 decisions, the Planning Commission and ZBA approved the pilot-

2

activated[1] runway lighting[2] proposed to be placed on the Caledonia County Airport property. In addition, at three locations in the area surrounding the airport, features in the landscape encroach into the airspace 250 feet above the airport, an area within which pilots expect to be able to fly safely. In the 2003 application, VTrans applied for approval to locate two fixed-bulb hazard beacons, each on a seventy-foot-tall tower, and one rotating-light airport location beacon, on an eighty-foot-tall tower, at these three locations, to be active continuously from dusk to dawn,[3] controlled by a light sensor. All three locations are on private land in the Rural Residential zoning district surrounding the airport. The Planning Commission and ZBA approved the two proposed hazard beacons, but disapproved the rotating airport location beacon, ruling that a third hazard beacon could be placed at that third location instead. No party appealed those decisions, and they became final.

In their 2003 decisions, the Planning Commission and the ZBA denied VTrans' proposal to install the rotating-light airport location beacon on the neighboring property. In denying conditional use approval, the ZBA concluded that it would have "an adverse impact on the rural character of the surrounding area due to aesthetic reasons, and due to the intrusion of the light onto properties and into people's homes." In denying site plan approval, the Planning Commission concluded that "the site plan did not provide adequate screening or landscaping to the rotating beacon to achieve maximum compatibility with

---

[1] The runway lighting is activated by a radio signal from the pilot, and remains illuminated for twenty minutes.

[2] A medium-intensity runway lighting system, a medium-intensity taxiway lighting system, a runway end identification lighting system, two runway precision approach path indicators, five obstruction lights, and a new wind sock.

[3] It is also proposed to be illuminated during the daytime when visibility is less than three miles or the cloud ceiling is less than one thousand feet.

the protection of adjacent property." No party appealed the September 2003 Planning Commission or ZBA decisions; therefore they cannot now be challenged, either directly or indirectly. 24 V.S.A. §4472; City of South Burlington v. Department of Corrections, 171 Vt. 587, 588-89 (2000) (mem.).

On July 7, 2004, VTrans filed the present application for site plan and conditional use approval for a dusk-to-dawn rotating-light airport location beacon approximately a quarter-mile from the location of the previous proposal and on a shorter tower. The 2004 application proposed that the beacon be located on the Caledonia County Airport property itself, eight hundred feet southerly of the existing hanger, on a 34.5-foot tower, shielded to the northwest where its light was expected to intercept the terrain, and set at the maximum allowed angle of 12 degrees (to minimize its effect on ground-based structures). It is this application alone that is before the Court in the present appeal.

The Planning Commission and ZBA both ruled that the 2004 application was sufficiently different from the 2003 application to be considered as a successive application. VTrans conducted a demonstration of the rotating airport location beacon at night, at a height of approximately twenty-seven feet and located on top of the hangar, that is, about eight hundred feet northerly of its actual proposed location. The demonstration beacon was shielded to the northwest.

In the 2004 decisions before the Court in the present appeal, the ZBA and Planning Commission approved the application for the rotating airport location beacon on a 34.5-foot tower on the airport property, but imposed additional conditions requiring that the rotating-light airport location beacon be shielded to the east as well as to the northwest, and that the beacon be pilot-activated by radio control and shut off within twenty minutes of activation, in the same manner as the runway lighting system.

Grant funding may be available from the FAA to cover 95% of the cost of all the

4

lighting improvements. A federal statute separate from the Federal Aviation Act,[4] the Airport and Airway Improvement Act,[5] governs the process through which proprietors of airports can obtain federal funding for the construction of airport improvements. To qualify for FAA grant funding under the Airport and Airway Improvement Act, 49 U.S.C. §47105(a)(1)(B)(iii) (2005), an applicant must show compliance not only with all FAA statutes and regulations, but also with FAA Advisory Circulars.[6] In the absence of the federal funding issue, FAA Advisory Circulars are only advisory, that is, they contain only recommended standards for small airports that do not require FAA certification, such as the Caledonia County Airport. As of March of 2004, the FAA regulations governing the federal Airport Aid Program, 14 C.F.R. Part 152, no longer required installation of an airport location beacon to be eligible for federal funding of a runway lighting system, but at least as of that time it was FAA "policy to continue this practice."[7] Under the present[8] requirements of FAA Advisory Circular 150/5340-30, Design and Installation Details for

---

[4] 49 U.S.C. §§40101–46507 (2005).

[5] 49 U.S.C. §47101–75 (2005).

[6] 14 C.F.R. §151.72(a); FAA Grant Assurance 34, Policies, Standards, and Specifications (cited in Town's Statement of Undisputed Facts, Exhibit S).

[7] March 4, 2004 Memorandum from the Manager of the FAA Airport Engineering Division to the Manager of the FAA Airports Division, Town's Statement of Undisputed Facts, Exhibit S.

[8] Appellants argue that the general availability of the highly accurate Global Positioning System, an independent satellite-based navigation device, has or will soon render obsolete the need for rotating-light airport location beacons. While this may be a factor in any discussion between VTrans and the FAA as to whether the requirement of the Advisory Circulars may be waived, it does not affect whether the requirement remains in the text of the Advisory Circular.

5

<u>Airport Visual Aids</u>, such an airport location beacon may not be radio controlled.[9]

<u>Regulation of state-owned facilities under 24 V.S.A. §4413</u>

Municipalities may regulate state-owned facilities, such as the Caledonia County Airport, but "only with respect to location, size, height, building bulk, yards, courts, setbacks, density of buildings, off-street parking, loading facilities, traffic, noise, lighting, landscaping, and screening requirements, and only to the extent that regulations do not have the effect of interfering with the intended functional use." 24 V.S.A. §4413(a) (2004). All the airport lighting, including the proposed rotating-light airport location beacon, fall within the plain meaning of the attribute of "lighting" allowed to be regulated by municipalities. The issue for this appeal is whether a requirement that the rotating-light airport location beacon be radio-controlled (pilot-activated), or certain shielding requirements for the airport beacon, have an effect of interfering with the intended functional use of the airport.

In the 2003 decisions, VTrans received conditional use approval and site plan approval of all the other lighting improvements necessary to allow greater safety of its nighttime operations, including approval of the placement of three tall hazard beacons in locations surrounding the airport. In the 2004 decisions on appeal in the present case, VTrans contests whether the rotating-light airport location beacon may be required to be radio-controlled (pilot-activated), and may also contest the shielding required to the east.

---

[9] This requirement was stated in §5 of former Advisory Circular 150/5340-27A, <u>Air-to-Ground Control of Airport Lighting Systems</u>, which was superseded by Advisory Circular 150/5340-30. The same requirement is found in §8.1 of Advisory Circular 150/5430-30, but was not contained in the excerpts of that Advisory Circular provided in the parties' exhibits. The complete FAA Advisory Circulars are available at http://www.airweb.faa.gov/Regulatory_and_Guidance_Library/rgAdvisoryCircular.nsf /MainFrame?OpenFrameSet , or by navigating through the menu at www.faa.gov.

Material facts are in dispute as to whether the requirement that the rotating-light airport location beacon be radio-controlled (pilot-activated) interferes with the intended functional use of the airport, especially given the 2003 approval of all the other proposed lighting improvements. All that has been shown is that it may affect or impede the federal funding available to VTrans for the lighting improvements at the airport. Therefore, summary judgment on this point must be denied, and we must schedule this matter for hearing on the merits of whether a condition that the proposed beacon be radio-controlled (pilot-activated) would interfere with the intended functional use of the airport. Material facts are also in dispute, or at least have not been provided to the Court, as to whether the shielding to the east would interfere with the intended functional use of the airport.

**Federal preemption**

The Vermont Agency of Transportation also argues that municipal regulation of the operation of the rotating-light airport location beacon is unlawful due to federal preemption, on two grounds: because federal law fully occupies the fields of aviation navigation and safety and because federal law directly conflicts with municipal regulation of the beacon's operation.

As well as preempting state and local law by explicit or implicit statutory language, under the Supremacy Clause of the United States Constitution, art. VI, cl. 2, federal law may preempt state and local law through "actual conflict, or occupation of the field." In re Commercial Airfield, 170 Vt. 595, 595 (2000) (citing Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516 (1992)). "In the absence of express pre-emptive language, Congress' intent to pre-empt all state law in a particular area may be inferred where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress 'left no room' for supplementary state regulation . . . [or] where the field is one in which 'the federal interest is so dominant that the federal system will be assumed to preclude

enforcement of state laws on the same subject.'" Hillsborough County, Fla. v. Automated Med. Labs., Inc., 471 U.S. 707, 713 (1985) (internal citations omitted). In conducting Supremacy Clause analysis, the "preemption of local ordinances is treated in the same way as that of state laws," U.S. v. City of Berkeley, 735 F. Supp. 937, 939 (E.D. Mo. 1990) (citing Hillsborough County, 471 U.S. at 713), but the reviewing court "must presume that Congress did not intend to preempt areas of traditional state regulation." Metro. Life Ins. Co. v. Massachusetts, 471 U.S. 724, 740 (1985); see, e.g., Gustafson v. City of Lake Angelus, 76 F.3d 778, 784 (6th Cir. 1996) ("The FAA has acknowledged that land use matters within the federal aviation framework are intrinsically local.")

In the present case, because the Federal Aviation Act, 49 U.S.C. §§40101–46507 (2005) (governing the use of navigable airspace over the United States), does not preclude the rotating-light airport location beacon at this airport from being radio-controlled. The federal statutory scheme relevant to the preemption analysis is instead the Airport and Airway Improvement Act, 49 U.S.C. §47101–75 (2005), which governs the process through which proprietors of airports can obtain federal funding for the construction of airport improvements.

The Airport and Airway Improvement Act (AAIA) does not set out mandatory requirements governing the construction of airport lighting improvements. Rather, it lays out the requirements for obtaining federal funding for airport construction projects. City of Cleveland v. Brook Park, 893 F. Supp. 742, 748 (N.D. Ohio 1995). No language in the Airport and Airway Improvement Act expressly or impliedly preempts local regulation of the rotating-light airport location beacon in this case. City of Cleveland, 893 F. Supp. at 752 ("The Federal Aviation Act, the Noise Control Act, and the AAIA contain no express preemption of local land use ordinances.") Therefore, we turn to whether there is an actual conflict between the Airport and Airway Improvement Act and local regulation of the rotating-light airport location beacon in this case.

8

An actual conflict exists if it is either impossible to comply with both the Airport and Airway Improvement Act and the local zoning decision, or if compliance with the local zoning decision would frustrate the purpose of the federal statute. See City of Cleveland, 893 F. Supp. at 748. In this instance, it is not impossible to comply both with the municipal condition that the rotating-light airport location beacon be radio-controlled and with the provisions of the AAIA.

The Airport and Airway Improvement Act merely establishes the methods for obtaining federal funding for airport construction projects. The AAIA "sets out no requirements with which it would be impossible to comply while complying with local zoning ordinances; even assuming the existence of otherwise competing local and federal regulations, an airport proprietor could choose to comply with both simply by foregoing federal funding. While such a decision may be less than practical, compliance with both the AAIA and [a municipality's] local zoning laws is not legally impossible." City of Cleveland, 893 F. Supp. at 748. Thus, even if the condition requiring radio control of the beacon precludes federal funding in the present case,[10] the municipal authority to regulate the beacon is not preempted due to actual conflict.

The final area of federal preemption analysis is whether municipal restriction of the nighttime operation of the rotating-light airport location beacon frustrates the purpose of the federal Airport and Airway Improvement Act. The purpose of this federal law is "to provide federal funding to airport construction projects to promote a wide variety of policy

---

[10] Both VTrans and the Town have referred to the potential for VTrans to obtain a waiver of the Advisory Circular prohibition against radio control of a rotating-light airport location beacon, to allow it to qualify for federal funding despite the zoning condition. Neither party has referred to any formal steps that have been or could be taken by VTrans within the federal administrative process to obtain such a ruling. The parties should be prepared to discuss this issue in the telephone conference provided in the final paragraph of this decision.

9

goals," enumerated in 49 U.S.C. §47101(a). <u>City of Cleveland</u>, 893 F. Supp. at 749. These policies include promoting the safe operation of airports and airways, encouraging the development of intermodal transportation, providing for the protection of natural resources and the environment, promoting noise control, encouraging consistency with the Federal Aviation Act, and advancing projects that use innovative technology, concepts, and approaches that promote safety, capacity, and efficiency. 49 U.S.C. §47101(a). Moreover, §47101(f) of the AAIA requires that the Administrator, in carrying out the Act, to give the highest priority to commercial service airports, unlike the Caledonia County Airport, and to maximize the use of safety features and systems. 49 U.S.C. §47101(f).

As rotating-light airport location beacons are not among the enumerated safety improvements specifically encouraged by the AAIA's purpose statement, 49 U.S.C. §47101(f), the purpose of the AAIA cannot be frustrated by a municipal requirement that a specific rotating-light airport location beacon be radio-controlled. Even if a particular airport proprietor is unable to obtain federal funding for a rotating-light airport location beacon, that circumstance does not frustrate the AAIA's general purpose of making that funding available. Because it is possible to comply both with the AAIA and with the municipal condition that the rotating-light airport location beacon be radio-controlled, and because the zoning decision does not frustrate the AAIA's purpose, there is no actual conflict between the AAIA and the condition at issue in this appeal.

The remaining preemption issue is whether the AAIA and other federal aviation laws are sufficiently broad in scope to occupy the field of land use as it relates to aviation. While federal law empowers the FAA to regulate aircraft, airspace, air traffic, aircraft noise, and aviation safety,[11] the question is whether federal law is sufficiently comprehensive, and

---

[11] 49 U.S.C. §40103(b)(2)(A), (D) (2005); §40103(a); §40103(b)(2)(C), (D); <u>City of Burbank v. Lockheed Air Terminal Inc.</u>, 411 U.S. 624, 638-40 (1973); see also <u>In re Commercial Airfield</u>, 170 Vt. at 597.

10

pervasively occupies the field of land use as it relates to aviation, to make reasonable an inference that Congress left no room for municipal regulation of an airport location beacon under its power over local land use.

In Commercial Airfield, 170 Vt. at 597, the Vermont Supreme Court analyzed this issue with respect to Act 250 and concluded "that the federal government has not pervasively occupied the field of land-use regulations relating to aviation." See also Fourth Quarter Prop., Inc. v. City of Concord, No. 04-1220, 127 Fed. Appx. 648, 655–56 (4th Cir., April 13, 2005) (unpublished); Skysign Int'l v. City & County of Honolulu, 276 F.3d 1109, 1117 (9th Cir. 2002) (federal aviation law does not "preclude local regulation . . . that does not actually reach into the forbidden, exclusively federal areas, such as flight paths, hours, or altitudes"); Gustafson v. City of Lake Angelus, 76 F.3d 778, 785 (6th Cir. 1996) ; Greater Orlando Aviation Auth. v. FAA, 939 F.2d 954, 959 (11th Cir. 1991); Condor Corp. v. City of St. Paul, 912 F.2d 215, 219 (8th Cir. 1990).

As the Vermont Supreme Court has noted, "although the federal government has preempted certain aspects of aircraft and airport operation, it has not preempted land use issues such as zoning and environmental review." Commercial Airfield, 170 Vt. at 596. Similarly, because the AAIA solely provides funding for airway improvements, it does not intrude into the field of land use decisions and does not mandate the use of any particular airport lighting equipment at any class of airport. Nor does the Federal Aviation Act's regulation of air safety or air navigation require this class of small airport to be equipped with a rotating-light airport location beacon. Therefore, federal law does not preempt the authority of the Planning Commission and ZBA, and hence the authority of this Court in this de novo proceeding, to require that the rotating-light airport location beacon be radio-controlled.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that

11

both the Vermont Agency of Transportation's and the Town's motions for summary judgment are DENIED in part, as material facts are disputed, or at least have not been provided, as to whether radio control or shielding of the rotating-light airport location beacon would interfere with the intended functional use of the airport. The Vermont Agency of Transportation's motion is DENIED and the Town's motion is GRANTED, in that federal aviation law does not preempt the municipal zoning and planning authority, and hence the authority of this Court, to impose a condition requiring that a rotating-light airport location beacon be radio-controlled or that such a beacon be shielded appropriately. The question of whether, on the merits, any such conditions should be imposed, remains to be decided after an evidentiary hearing on the application.

A telephone conference is scheduled (see enclosed notice) to discuss the appropriate schedule for mediation (including whether a representative of the FAA should be invited to participate in mediation,[12]) and to discuss an appropriate schedule for a hearing on the merits of the Vermont Agency of Transportation's application to place the rotating-light airport location beacon at the Caledonia County Airport, and on the merits of whether radio-control or any shielding of such a beacon would interfere with the intended functional use of the airport.

Done at Berlin, Vermont, this 9th day of February, 2006.


_____
Merideth Wright
Environmental Judge

_____

[12] If the parties wish to invite a representative of the regional FAA general counsel's office to participate in the telephone conference, they may do so and inform the Court staff.