STATE OF VERMONT

| SUPERIOR COURT | ENVIRONMENTAL DIVISION |
|---|---|
| Environmental Division Unit | Docket No. 38-4-17 Vtec |

**Brady Sullivan SV, LLC Act 250
Permit Amend. App. Appeal**

## Decision on Appellant's Summary Judgment Motion

The present appeal is of a March 24, 2017 District #2 Environmental Commission ("District Commission") decision finding Brady Sullivan, SV LLC and its affiliated company, Brady Sullivan, LLC's, (collectively "Appellant") Act 250 permit amendment application was not in compliance with Criterion 8.  The matter is now before us on Appellant's motion for summary judgment.

Appellant is represented by Robin L. Stern, Esq.  Interested Persons Joseph Lanzetta, Lai Yen-Cheng, and Karen and Frank Cangialosa, represented by Nathan H. Stearns, Esq., filed an opposition to the motion.   The NRB filed no response to the motion.

## Procedural Background

Appellant is principally located in Manchester, New Hampshire, and is in the business of constructing, owning, and managing various residential and commercial real estate properties throughout several northeastern states.  In 2011, it acquired a partially developed residential project near the Mount Snow Resort in West Dover, Vermont, known locally as the Snow Vidda development.

One of Appellant's common practices is to have a helicopter transport one or more of its officials and employees between its principal office and its several development projects.  Appellant employs a pilot to operate the helicopter.  Once Appellant purchased Snow Vidda, Appellant began using a helicopter to transport officials and employees to and from the development.  The helicopter initially began landing at and taking off from the Snow Vidda development in the location of an as-yet undeveloped site for a proposed amenities building.  When some residents of the already-constructed Snow Vidda townhouses began to complain,

1

Appellant suspended its landing and takeoff practices at Snow Vidda and began to use facilities at the Mount Snow Airport, which is approximately 4.3 miles away. However, Appellant wishes to resume its helicopter landings and take offs at Snow Vidda, at least while it attempts to complete the full build out of this proposed residential development.[1]

When Appellant first began its helicopter landings and take offs at Snow Vidda, an official from the Town of Dover ("Town") sought a jurisdictional opinion from the District #2 Environmental Commission Coordinator ("District Coordinator") as to whether Appellant's helicopter activities at Snow Vidda would require an amendment to the previously-issued state land use permit, Act 250 Permit #2W1221.

The District Coordinator issued Jurisdictional Opinion #2-298 on April 28, 2015, concluding that the helicopter landings and take offs, as well as the designation of a helicopter landing area at the Snow Vidda development, constituted a material change to the previously issued Act 250 permit and its conditions, thereby requiring that Appellant apply for and receive an amendment to the Snow Vidda Act 250 permit.

Appellant requested reconsideration of the jurisdictional opinion,[2] which was heard by the State of Vermont Natural Resources Board ("NRB").[3] When the NRB affirmed Jurisdictional Opinion #2-298, Appellant appealed to this Court; the Court assigned Docket No. 125-10-15 Vtec to that appeal.

Appellant sought to resolve its legal disputes through private negotiations, including with the assistance of an independent mediator. The parties reached some partial resolutions: Appellant agreed to suspend its landings and take offs at Snow Vidda and instead use the facilities at the nearby airport. Appellant also agreed to apply to amend the Snow Vidda Act 250 permit, while still prosecuting its jurisdictional opinion appeal.

---

[1] We are told that the Snow Vidda development is permitted to construct and maintain 56 townhouses and that there are presently 18 townhouses constructed, with several sold to individual homeowners.

[2] Copies of Jurisdictional Opinion #2-298, as well as the NRB's September 25, 2015 Reconsideration Decision, were filed as Exhibit D to Appellant's July 7, 2017 motion for Summary Judgment.

[3] In 2015, reconsiderations of Act 250 district coordinators' jurisdictional opinions were adjudicated by the NRB. Since then, that NRB jurisdiction has been rescinded by the Vermont Legislature; appeals from jurisdictional opinion determinations are now heard solely by this Court. See 4 V.S.A. § 34, 10 V.S.A. § 8503(b)(2), and 10 V.S.A. § 8504(a).

The District Commission considered Appellant's permit amendment application at a site visit and hearing held on February 3, 2017. At the beginning of the hearing, the District Commission determined that Appellant had, through its application and supporting materials, met its burden of proving compliance with all applicable Act 250 criteria, except Criteria 3, 8 and 10.[4] The District Commission therefore focused its hearing inquiry on those criteria.

On March 24, 2017, the District Commission issued its Findings of Fact, Conclusions of Law, and Order. The District Commission concluded that Appellant's proposed helicopter activities at Snow Vidda, as presented, conformed to Act 250 Criteria 3 and 10, but did not conform to Act 250 Criterion 8 (10 V.S.A. § 6086(a)(8)).

Appellant then appealed the adverse District Commission determination to this Court; that appeal was assigned Docket No. 38-4-17 Vtec.

Shortly after Appellant filed its summary judgment motion in both dockets, Appellant filed a motion to dismiss its own jurisdictional opinion appeal (Docket No. 125-10-15 Vtec) and requested that the portion of its summary judgment motion concerning its challenge to the jurisdictional opinion be stricken. This Court granted that dismissal and strike request by Entry Order filed on November 9, 2017. The Court has completed its research, deliberation, and drafting and now issues this Decision to address the remaining issues in Appellant's summary judgment motion in this Docket.

### Discussion

Appellant and Interested Persons, respectively, have filed legal memoranda in support of and opposition to Appellant's summary judgment motion. The NRB advised the Court and the parties via letter dated September 9, 2017, that it had chosen to not respond to Appellant's pending motion.

I. **Whether the Federal Aviation Act preempts state and local laws and regulations with respect to aircraft noise.**

The parties' memoranda highlight a specific legal issue: whether the Federal Aviation Act preempts the regulation of aircraft noise under state and local laws and regulations. The preemption of state and local laws by federal laws and regulations governing the same activities

---

[4] See Exhibit E, attached to Appellant's summary judgment motion, at pages 2–3.

and uses has its foundation in the Supremacy Clause of the United States Constitution. U.S. Const., Art. IV ("the Laws of the United States . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any state to the Contrary notwithstanding.").

In regard to the regulation of noise caused by aircraft operating over the land within a state or town, the law appears to be well settled: the Federal Aviation Administration, now in conjunction with Environmental Protection Agency, "has full control over aircraft noise, preempting state and local control." City of Burbank v. Lockheed Air Terminal, Inc., 411 U.S. 624, 633 (1973).

In the Burbank case, Lockheed had originally petitioned the federal district court for an injunction against enforcement of a City of Burbank ordinance that established a curfew restricting the overnight operation of "so-called pure jet aircraft" from the Hollywood-Burbank Airport. Id. at 625. The district court concluded that Lockheed was entitled to the requested injunction, concluding that the City ordinance was preempted by federal law, given that "a uniform and exclusive system of federal regulation [of aircraft noise must be recognized] if the congressional objectives underlying the Federal Aviation Act are to be fulfilled." Id. The U.S. Supreme Court later affirmed this decision. Id. at 633, 640.

Much like in the Burbank case, we must recognize the supremacy of federal regulation of aircraft noise.[5] We therefore **GRANT IN PART** Appellant's motion for summary judgment by concluding that in this de novo appeal, we may not interpret 10 V.S.A. § 6086(a)(8) to regulate the operation of aircraft and the noise generated as those aircraft operate over a neighborhood, since federal law regulates those airline activities and therefore preempts state and local laws.

---

[5] Aircraft noise may potentially be regulated through a state law private nuisance action. See Rattigan v. Wile, 445 Mass. 850 (2006); see also In re Request for Jurisdictional Op. re: Changes in Physical Structures & Use at Burlington Int'l Airport for F-35A, 2015 VT 41, ¶ 35, 198 Vt. 510 (Morse, J., concurring) (noting that other jurisdictions have concluded that public nuisance claims regarding excessive noise from airports are not preempted by federal law). However, such an action would be beyond this Court's jurisdiction in the pending appeal.

II. **Whether the regulation by Act 250 of state land development is preempted by the Federal Aviation Act.**

Act 250 Criterion 8 and its regulatory effect upon aircraft operation has recently been addressed by the Vermont Supreme Court as well. Similar to the U.S. Supreme Court, our Supreme Court concluded that state law, specifically Act 250 Criterion 8, could not be used to regulate the operation of larger, and much noisier, federal military aircraft that had been proposed to operate from the City of Burlington, Vermont, International Airport. In re Request for Jurisdictional Op. re: Changes in Physical Structures & Use at Burlington Int'l Airport for F-35A, 2015 VT 41, ¶ 30, 198 Vt. 510 (concluding that "any action to regulate a change in use to the F-35A [military aircraft] would amount to an attempt to regulate noise and be preempted" by the applicable FAA laws and regulations) (hereinafter "Burlington Airport").

But we conclude that both the Burbank and Burlington Airport cases do not establish the broad restriction upon state and local laws and regulation that Appellant here appears to assert. In the Burbank case, the challenged City ordinance attempted to restrict the operation of jets over the City and the noise those jets emitted; there was no reference to new land development being proposed. Burbank, 411 U.S. at 625–26. While there were land improvements proposed at the Burlington, Vermont, airport to accommodate the new (and noisier) F-35A military aircraft, a separate federal pre-emption prohibited state and local laws from regulating those physical land improvements. Burlington Airport, 2015 VT 41, ¶ 23 (concluding that there was no "state land development" that could be regulated by state law).

The principal focus in the de novo appeal now before us concerns the helicopter landings and takeoffs from a designated area at the Snow Vidda development. There is no suggestion in the challenged jurisdictional opinion, nor in the Statement of Questions that Appellant presents, that there is an attempt to use our state land use regulations to restrict the operation of Appellant's helicopter over state land. Rather, the previously challenged jurisdictional opinion relied upon Appellant's plan to develop a landing and takeoff site within the existing Snow Vidda development. Thus, while we rely upon the precedent of the Burbank and Burlington Airport opinions in partially granting Appellant's summary judgment motion, we note that there is a remaining legal issue presented in this appeal: namely, the state land development activities proposed by Appellants. We therefore address whether federal law preempts the use of our

5

state and local laws to regulate the development of a helicopter landing and takeoff site at the Snow Vidda development.

The Vermont Supreme Court addressed the relationship between the Federal Aviation Act and state land use regulations in In re Commercial Airfield, 170 Vt. 595 (2000).

The Commercial Airfield appeal concerned a proposed aviation development, and a procedural background, strikingly similar to the case at bar. The appellant in that case, Edward V. Peet, owned a large farm in Cornwall, Vermont, and maintained a private airport on his land. 170 Vt. at 595. When the local Act 250 District Commission Coordinator learned of certain improvements and increases in use at the Peet Airport, the Coordinator rendered a jurisdictional opinion that Mr. Peet's improvements and increased use constituted a material change to a development that pre-dated the implementation of Act 250, and that Mr. Peet must therefore apply for and receive an Act 250 permit for his already completed improvements and increased use. See id. Mr. Peet then appealed that jurisdictional opinion to the former Vermont Environmental Board.[6] Id. When the Environmental Board rendered a declaratory ruling upholding the Coordinator's opinion, Mr. Peet appealed to the Vermont Supreme Court. Id.

In affirming the district coordinator's jurisdictional opinion, the former Environmental Board cited to several other jurisdictions that have "similarly recognized [a] State's authority to make land use decision[s] in aviation matters." Re: Commercial Airfield, Cornwall, Vt., Dec. Ruling #368, slip op. at 13 (Vt. Envtl. Bd. Jan. 28, 1999), available at http://nrb.vermont.gov/sites/nrb/ files/documents/dr368-fco.pdf (citing Condor Corp. v. City of St. Paul, 912 F.2d 215, 219 (8th Cir. 1990) (finding no conflict between a city's regulatory power over land use and the federal regulation of airspace, nor any cases recognizing such a conflict); Gateway Motels v. Municipality of Monroeville, 525 A.2d 478, 481 (Pa. Cmwlth. 1987) (concluding that federal law does not preempt local zoning of airport properties); Garden State Farms, Inc. v. Bay, 390 A.2d 1177, 1181 (N.J. 1978) (concluding that state and local governmental efforts to regulate the location of

---

[6] Until January 31, 2005, the former Vermont Environmental Board had jurisdiction over appeals from Act 250 district commission and district coordinator determinations. On January 31, 2005, that jurisdiction was transferred to this Court.

helistops are not preempted by the federal government since federal regulation does not reach down to the level of location of small, relatively isolated privately-owned helistops or heliports)).[7]

The Vermont Supreme Court reached a similar result when it affirmed the Environmental Board's ruling on the Peet Airport, concluding, as cited by the Burlington Airport Court, that "the federal government has not pervasively occupied the field of land-use regulations relating to aviation [and that the former Environmental Board correctly concluded] that appellant may be required to apply for an Act 250 permit . . . ." Commercial Airfield, 170 Vt. at 597.[8]

We conclude, for the reasons discussed above and below, that we are not preempted from considering potential noise impacts when determining whether a proposed heliport comports with Act 250 Criterion 8.

In Garden State Farms, 390 A.2d at 1179, a company applied to a local governing body for permission to construct a helicopter landing pad. At trial, city officials testified about potential impacts, including increased noise. Id. On appeal, the company argued that local regulation of the landing pad was preempted by the Federal Aviation Act. Id. at 1180. The New Jersey Supreme Court held that "federal legislation and regulation have not preempted state and local jurisdiction with respect to the placement of private helistops." Id. at 1182. On remand, the Court held that the regulatory body below must consider "the disrupting influence a private helicopter landing site would have on the community," including, apparently, noise impacts. Id. at 1185.

In Wright v. Winnebago Cty., 391 N.E.2d 772, 774 (1979), the Illinois Appellate Court considered whether noise could be taken into account in determining whether to grant a local land use permit for a restricted landing area (RLA) on private property that would be used by the

---

[7] Our own research has revealed additional jurisdictions bearing similar results. See Harrison v. Schwartz, 572 A.2d 528, 534 (Md. 1990) (concluding that a "zoning ordinance that does not regulate aircraft noise emissions or the actual conduct of flight operations may withstand a preemption argument"); Boch v. Tomassian, 2015 WL 1406257 (Mass. Land Ct. 2015) (upholding a zoning prohibition on heliports in an Edgartown residential zoning district); see generally 3 Am. Law. Zoning § 18:7 (5th Ed.) (Heliports).

[8] The Supreme Court noted that while federal preemption did not apply to Act 250 generally in regard to regulation of state development, "certain conditions stipulated by an Act 250 permit may be preempted." Id. at n.2. Since the appeal did not concern an Act 250 permit application (as Mr. Peet had not yet filed such an application), the Court apparently felt it not appropriate to opine on which permit conditions, if any, may be preempted.

property owner to fly a private airplane to and from work.  The court distinguished the case from Burbank, noting that:

> [T]he instant case . . . involves a privately owned, personally used airstrip that is not yet operating. No commercial use would be allowed. It is unlikely that the [Federal Aviation Act] would ever regulate the air traffic flow in and out of plaintiffs' property. No need for uniformity is evident. Furthermore, Winnebago County is not attempting to regulate an already existing airfield but is determining whether to allow the use at all . . . . [T]his decision is particularly local in that it involves consideration of the appropriate use of land rather than regulation of already existing uses. Once an airport is operating . . . it may be that only the [Federal Aviation Act] can regulate the resulting noise problem, the right [] to choose not to have an airport in the first place should be local, especially where the airport is one where service to the public is not a consideration.

Id. at 777.  Based on this reasoning, the court concluded that the Federal Aviation Act "does not preempt local power to decide whether to allow new private RLAs on the basis of potential noise problems."  Id. at 778.

The Sixth Circuit later cited to this reasoning in holding that "once an airport is operating, it may be that only the FAA can regulate the resulting noise problem, but the right to choose not to have an airport in the first place on the basis of aircraft noise is local and is not preempted." Gustafson v. City of Lake Angelus, 76 F.3d 778, 791 n.10 (6th Cir. 1996).

The Eighth Circuit has also rejected the FAA preemption argument where a city considered noise impacts in determining whether to issue zoning permit for a proposed heliport. Condor Corp., 912 F.2d at 219.

Although the Vermont Supreme Court held in Burlington Airport that Act 250 could not be used to regulate noise at a local airport, that case can be distinguished from the one here. 2015 VT 41, ¶ 31.

In Burlington Airport, the Court held that "Congress has occupied the entire field of regulation related to aircraft noise, and attempts by local governments to enforce their police powers to control noise or affect flight patterns are preempted."  Id. ¶ 28.  On this basis, the Court held that an increase in noise levels at an existing airport due to the introduction of a new type of airplane is not a cognizable change of use that can be regulated by Act 250, because doing so would be an attempt to regulate aviation noise through the state land use law.  Id. ¶ 31.

Burlington Airport can be distinguished from the case now before us because considering noise when determining whether to permit a proposed aircraft landing site is different from attempting to regulate noise at an existing airport. Gustafson 76 F.3d at 791 n.10. The former is not preempted by the Federal Aviation Act, while the latter is. If Act 250 jurisdiction had been exercised in Burlington Airport, that would have been an attempt to regulate noise at an existing airport, which is impermissible. 2015 VT 41, ¶ 31. Here, however, aviation noise is not to be regulated; instead, all impacts of a new landing site (including noise) are to be taken into account in determining the impact of a land use, and whether to allow the land use in the first place. As set out in the cases cited above, this land use determination is not preempted by federal regulation.

For all these reasons, we conclude that Act 250 is not preempted by federal law, at least regarding the state regulation of new aviation land improvements. We therefore **DENY** Appellant's summary judgment motion in that regard.


**So Ordered.**

Electronically signed on January 19, 2018 at Newfane, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Superior Judge
Environmental Division